418 So.2d 1084 (1982)
GRAPHIC BUSINESS SYSTEMS, INC., Appellant,
v.
Lynn ROGGE, Appellee.
No. 82-849.
District Court of Appeal of Florida, Second District.
August 4, 1982.
Rehearing Denied September 10, 1982.
*1085 J. Brent Walker of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
Stephen O. Cole of McMullen, Everett, Logan, Marquardt & Cline, P.A., Clearwater, for appellee.
GRIMES, Judge.
Graphic brings this appeal from an order denying its motion to temporarily enjoin Rogge from working for a competing business in violation of a noncompetition agreement.
Graphic is engaged in the sale of business forms which includes the brokering of the forms from the printer to the customer. In February of 1979, Rogge went to work for Graphic as a salesman. At that time he signed an employment contract which provided in part as follows:
Employee, as an inducement to Employer to employ Employee and upon the considerations in this contract set forth, hereby promises and agrees that he will not, directly or indirectly, engage in said business forms business in the following described territory for a period of two years from and after termination of his employment, and that he will not, directly or indirectly, for himself or in connection with any person, firm or corporation, come into competition with Employer within the following described territory; and Employee will not in any manner, directly or indirectly, interfere or attempt to interfere with the business, goodwill, trade, customers or employees of Employer or with anyone dealing with Employer.
The territory shall encompass the geographic area in which the accounts of Employer are being served by Employee, and shall include all accounts serviced by Employee during the tenure of his employment. The area shall be the City of Tampa and also a radius of 75 miles from Tampa, Florida, but not to exceed the territory previously serviced by Employee, Lynn Rogge, and shall include any accounts assigned salesmen outside of the boundary.
While employed by Graphic, Rogge's territory encompassed Hillsborough and Pinellas *1086 counties. Rogge voluntarily terminated his employment with Graphic on December 3, 1981. Thereafter, according to Graphic, Rogge went to work for a competitor, Suncoast Business Systems, Inc., which has an office in Clearwater.
At the hearing on the temporary injunction, Robert Powers, Graphic's Tampa district manager, testified that he had personally run into Rogge at the location of one of Graphic's prime customers and had observed Rogge's car at the premises of other Graphic customers. However, Graphic's primary witness was Joseph Troins, Jr., an associate of The Rein Company, a business forms printer which supplies forms to both Graphic and Suncoast. Troins testified that since December of 1981 Rogge had placed numerous orders with The Rein Company on behalf of Suncoast and that Rogge personally handed at least half of these orders to him. Pursuant to a subpoena duces tecum, Troins produced all the orders which Rogge had placed with The Rein Company on behalf of Suncoast. The court declined to permit Graphic to introduce these purchase orders because The Rein Company, contrary to its usual practice, had not obtained Rogge's signature on the purchase orders.
At the conclusion of Graphic's testimony, the court stated that it would not issue a temporary injunction. The ruling was not in response to Rogge's motion, and the record does not indicate whether Rogge intended to present witnesses. Therefore, we assume that the court held the view that Graphic had failed to present a prima facie case. We respectfully disagree.
Employment contracts containing covenants not to compete are valid in Florida. § 542.33, Fla. Stat. (1981). The agreement must be reasonable in duration and with respect to the area within which the employee cannot compete. Capelouto v. Orkin Exterminating Co., 183 So.2d 532 (Fla. 1966). Injunction is the normal remedy for breach of the covenant. Miller Mechanical, Inc. v. Ruth, 300 So.2d 11 (Fla. 1974).
In considering the propriety of a temporary injunction against the violation of an agreement not to compete, our sister court in Silvers v. Dis-Com Securities, 403 So.2d 1133 (Fla. 4th DCA 1981), said:
We can find no clear lines drawn by the cases in this area between an application for relief pending the outcome of the litigation and final injunctive relief. The usual rule is that a temporary injunction is an extraordinary and drastic remedy which should be sparingly granted. Jennings v. Perrine Fish Market, Inc., 360 So.2d 434 (Fla. 3d DCA 1978). On the other hand, the establishment of legal rights carries with it the duty to grant an appropriate remedy. Data Supplies, Inc. v. Cowart, 240 So.2d 829 (Fla. 2d DCA 1970). Because the statute specifically provides for injunctive relief and for the added reason that most or all of the harm may be done long before a final judgment is entered, we hold that where the proof supports the skeletal allegations that we have previously approved as stating a cause of action then temporary or emergency injunctive relief may properly be granted.
403 So.2d at 1137.
In Sentry Insurance v. Dunn, 411 So.2d 336 (Fla. 5th DCA 1982), the court reversed a nonfinal order denying a motion for preliminary injunction which sought to enforce the terms of a noncompetition agreement. The court observed that the terms of the agreement were reasonable and that the testimony supported the allegations that the employee had solicited business from the customers of his former employer in violation of the agreement. The court held it was an abuse of discretion to refuse the entry of the preliminary injunction.
Both the Silvers and Sentry Insurance cases held that, for purposes of obtaining a temporary injunction, irreparable injury may be presumed where there is a violation of a covenant not to compete. While the court in Uni-Chem Corp. v. Maret, 338 So.2d 885 (Fla. 3d DCA 1976), has ruled to the contrary, the practical difficulties of proving irreparable harm would tend to diminish the efficacy of covenants not to compete, which bear the imprimatur of the *1087 legislature and the courts of Florida. Moreover, the ordinary requirement to show irreparable harm applies to permanent as well as temporary injunctions, and no court has applied the rule of Uni-Chem Corp. to the entry of a permanent injunction on this subject.
The agreement not to compete signed by Rogge appears reasonable both in time and area. There is substantial evidence to show that Rogge was violating the agreement by working for one of Graphic's competitors within the prescribed area. The absence of Rogge's signature on Rein's purchase orders was not a basis for refusing the introduction of the documents but rather went only to their credibility to prove Graphic's case. In any event, Troins testified without contradiction that Rogge personally placed half of the orders. Perhaps it is not surprising that one who may be violating an agreement not to compete would not wish to sign the purchase orders.
We reverse the order denying the temporary injunction because we believe that Graphic presented a prima facie case which warranted the entry of a temporary injunction. In fairness to Rogge, however, we cannot say that he has had an opportunity to present his case. We certainly cannot fault him for not insisting upon his right to put on testimony at the point when the court made it clear that the injunction was going to be denied. Therefore, we remand the issue of whether to grant a temporary injunction for a further hearing so as to permit Rogge to present his defense.
BOARDMAN, A.C.J., and CAMPBELL, J., concur.