505 So.2d 484 (1987)
T.K. COMMUNICATIONS, INC., d/b/a WSHE FM Radio and Wsrf Am Radio, Appellant,
v.
Stuart J. HERMAN, James C. McBean, Individually, Herman & McBean, a Florida Partnership, and Cox Enterprises, Inc., a Georgia Corporation, d/b/a WGTR FM/AM and WIOD AM, Appellees.
No. 4-86-3107.
District Court of Appeal of Florida, Fourth District.
March 16, 1987.
Rehearing Denied May 4, 1987.
Ira Marcus of Ira Marcus, P.A., Fort Lauderdale, for appellant.
John M. Barkett of Steel Hector & Davis, Miami, for appellees.
GUNTHER, Judge.
Appellant T.K. Communications, Inc. (WSHE) appeals the denial of a temporary injunction to enforce a covenant not to compete against Stuart J. Herman (Herman) and James C. McBean (McBean), who were disc jockeys employed by WSHE radio station. We reverse.
*485 McBean and Herman were featured and promoted by WSHE as the "Morning Team" and acquired a large listening audience which resulted in substantial advertising revenue. Both McBean and Herman signed employment agreements with WSHE in May 1985, which contained the following non-compete clause:
10. Employee shall not, for four months after the termination of this agreement, be employed or retained by, own, manage, join, control or be connected in any manner with any business competing with employer within a radius of sixty (60) miles of a transmitter of employer ...
In the event that Employee violates this paragraph, the period of proscription shall be extended to a period of six (6) months from the date that Employee ceases, whether voluntarily or by Court order, to engage in or do those acts constituting the violation of this paragraph.
The employment agreements also provided that either party could terminate the employment relationship "at any time with or without cause." Herman and McBean exercised the right to terminate on September 22, 1986, effective October 6, 1986.
Around September 22, 1986, Herman and McBean each executed an untitled "letter of agreement" with Cox Broadcasting (Cox), a division of Cox Enterprises, accepting the position as co-host of the drive position on WGTR-FM, a chief competitior of WSHE.
The agreements provided in material part:
You will be paid a "signing bonus" of $5,500.00 per month for the four month non compete period... .
By signing below you agree to the financial terms of this agreement and hereby accept employment at WGTR-FM.
Neither agreement contained a date as to when it was signed. However, the agreements contained a clause that the employment agreement would not be effective until Monday, February 9, 1987, which would be after the four-month non-competition period expired. Thus, Herman and McBean would not be on-the-air at WGTR until after the non-competition period expired.
WSHE filed a multi-count complaint against Herman, McBean, and Cox alleging, inter alia, that Herman and McBean had breached the non-compete covenants of their WSHE employment contracts and that Cox had interfered with an advantageous contractual relationship. At a hearing on the motion for temporary injunction against all the defendants, the trial court considered only the issue of whether Herman and McBean had breached the WSHE employment agreements. The circuit court denied the motion for temporary injunction and found that the individual defendants had not violated their contract with plaintiff so as to entitle the plaintiff to injunctive relief.
We agree with WSHE's contention that there is competent, substantial evidence in the record to demonstrate that Herman and McBean breached their WSHE employment contracts. The WSHE employment contracts specifically prohibited these employees from being "employed or retained by, own, manage, join, control or be connected in any manner with any business competing with" WSHE for a period of four months after the termination of this agreement. It is obvious from the record that Herman and McBean were "retained by" and "connected to" the competing radio station of WGTR within the prohibited four months. Also, they were each paid $5,500 for October and November. Furthermore, WGTR used the names and reputations of the two disc jockeys to promote its station and to solicit competing advertising accounts before the four-month non-competition period had expired.
McBean and Herman also became "connected to" WGTR in other ways. The record indicates that Herman and McBean had on several occasions spent several hours at the WGTR station; had conversations with WGTR's program director to explain to him what was needed to produce defendants' morning show; played tapes of their morning show at WSHE for WGTR; assisted WGTR in personnel recruitment by providing names of local personalities whom WGTR might contact to hire; and provided WGTR with names of WSHE's employees to contact as potential hiring prospects.
*486 Normally, a party seeking an injunction under general Florida case law must demonstrate: 1) irreparable harm; 2) a clear legal right; 3) an inadequate remedy at law; and 4) consideration of the public interest. Hiles v. Auto Bahn Federation, Inc., 498 So.2d 997 (Fla. 4th DCA 1986); Finkelstein v. Southeast Bank, N.A., 490 So.2d 976, 980 (Fla. 4th DCA 1986). However, this court has stated that these requirements are the general rule only and that proceedings involving section 542.12 (now 542.33), Florida Statutes agreements not to compete, appear to operate under modified guidelines. Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1136 (Fla. 4th DCA 1981).
Where a covenant not to compete is violated, irreparable injury is presumed and does not have to be proven to obtain an injunction. Capraro v. Lanier Business Products, Inc., 466 So.2d 212, 213 (Fla. 1985). The court stated:
To require that a plaintiff prove irreparable injury as a prerequisite to injunctive relief ... would, in most instances, defeat the purpose of the plaintiff's action. Immediate injunctive relief is the essence of such suits and oftentimes the only effectual relief. It truly can be said in this type of litigation that relief delayed is relief denied. For these reasons we agree with the district court that irreparable injury should be presumed.
In Hunter v. North American Biologicals, Inc., 287 So.2d 726 (Fla. 4th DCA 1974), we stated that in order to state a cause of action to enforce a covenant not to compete, it is necessary only to allege: 1) a contract, 2) the intentional direct and material breach of the contract, 3) no adequate remedy except by injunctive relief. See Silvers v. Dis-Com Securities, Inc., 403 So.2d at 1136 (citing Hunter v. North American Biologicals, Inc.). Implicit in Hunter's holding is a recognition that only these elements need be proved to entitle the movant to a temporary injunction. See Silvers v. Dis-Com Securities, Inc., 403 So.2d at 1136.
In the instant case, the requirements for the issuance of a temporary injunction have been met. The WSHE employment contract was entered into by Herman and McBean and since they intentionally and materially breached the non-compete provision of the contract, irreparable harm is presumed. Furthermore, WSHE has shown it has no adequate remedy at law. The breach consists of intangibles that cannot be replaced by money damages; for instance, the use of the disc jockeys' valuable names and reputations and the capitalization on the disc jockeys' popularity. McBean even admitted that the defendants' names, reputations, and popularity were "significant" and of "unique value" and would be of a "special value" to WGTR. This court has specifically held that:
For the same reasons that justify an assumption that the employer will be irreparably damaged by breach of a non-compete provision it will customarily be obvious that money damages, even if susceptible of reasonable proof, may not compensate for all aspects of such a violation. Injunctive relief is therefore the "favored remedy."
Silvers v. Dis-Com Securities, Inc., 403 So.2d 1133, 1137 (Fla. 4th DCA 1981).
WSHE also contends it was entitled to injunctive relief against WGTR for wrongfully interfering with WSHE's non-compete agreement with Herman and McBean. However, WGTR correctly argues that this issue is not now before the appellate court since the circuit court had refused to entertain a hearing on that requested relief. Therefore, no evidence on this issue was presented below. Furthermore, the trial court did not enter any order that could be construed as a ruling on WHSE's motion for temporary injunction against WGTR.
We reverse and remand for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
DELL and WALDEN, JJ., concur.